UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| MARIA ELENA VASQUEZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF SAN JOSE, et al., <br><br> Defendants. | Case No.  5:19-cv-08441-EJD <br><br> **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING PLAINTIFFS' STATE LAW CLAIMS** <br><br> Re: Dkt. No. 58 |

Before this Court is Defendants' Motion for Summary Judgment ("Motion").  *See* Dkt. No. 58.  The Court finds the motion appropriate for decision without oral argument pursuant to Civil Local Rule 7-1(b).  For the reasons discussed below, the motion is **GRANTED**.

## I.      BACKGROUND

Early Christmas morning of 2018, twenty-four-year-old Decedent Jennifer Vasquez crashed her vehicle into a chain-link fence after fleeing from police in a high-speed chase.  Second Am. Compl. ("SAC"), Dkt. No. 41 ¶¶ 15, 18.  She was subsequently shot and killed in her vehicle by police officers with the San Jose Police Department ("SJPD").  *Id.*  Ms. Vasquez's family brings this action individually and on behalf of Decedent for excessive force in violation of the Fourth Amendment arising under 42 U.S.C. § 1983 (Claim One), violation of the Fourteenth Amendment (Claim Three), and violation of Cal. Civ. Code § 52.1 (the "Bane Act") (Claim Four) pursuant to Cal. Code of Civ. P. §§ 377.20 *et seq.* and 377.60 *et seq.*, against Defendants: the city of San Jose and Officers Mark Mercado, Mitchell Stimson, Eliseo Anaya, Mark Koska of the SJPD (collectively, "Defendants").  *Id.* at 7–10.  Plaintiffs also assert action against Defendants

1     under California law for battery under Cal. Penal Code § 242 (Claim Six) as well as negligence,

2     wrongful death and survival action (Claim Seven). *Id.* at 10–12. Plaintiffs additionally bring

3     Claims Three and Seven in their own right, seeking damages for their loss of companionship,

4     emotional distress, and various expenses related to Ms. Vasquez's death. *Id.* at 6.

5          At approximately 2:00 a.m., San Jose Police Officers responded to a dispatch call

6     regarding a shooting in the area of Story Road and Clemence Avenue. Mot. at 2. The callers

7     reported that about ten shots were fired and there were shotgun shells in the street. *Id.*; Radio

8     Traffic Clip, at 0:28-0:34. One caller reported that they observed a white Nissan in the area. Mot.

9     at 2. Upon arriving the at the scene, the responding officer reported over the radio that a witness

10    observed Ms. Vasquez's white vehicle leaving the area towards Lucretia Avenue. *Id.*; Pls.'

11    Responsive Statement of Facts in Supp. of Opp'n to Defs.'s Mot. for Summ. J. ("Pls.' Statement

12    of Facts"), Dkt. No. 63 at 4. At this time, Officers Mercado and Stimson approached the scene in

13    their respective patrol vehicles. *Id.* They spotted a white Toyota Camry and Officer Mercado

14    observed it "roll through a stop sign." Mercado Dep., Dkt. No. 62-1 at 37. Both Officers began to

15    follow it without activating their patrol lights and sirens. *Id.* at 38; Stimson Dep., Dkt. No. 62-2 at

16    37. The vehicle was driven by Ms. Vasquez and was mistaken for the vehicle involved in the

17    shooting. Am. Compl., ¶ 16. While following Ms. Vasquez's vehicle, Officer Mercado reported

18    the vehicle's license plate to dispatch. Mot. at 2. Dispatch informed the Officers that the vehicle

19    was reported stolen.[1] *Id.* at 3. They continued to follow Ms. Vasquez onto Highway 280. *Id.*

20         Concurrently, the responding officer reported eight shotgun shells at the scene and that

21    there were two individuals with non-life-threatening gunshot wounds. *Id.*; Mercado Dep., at 40.

22    Around this time the officers also learned that there had been a drive-by shooting involving a

23    shotgun in the city the night before. Mot. at 3; Stimson Dep. at 37. Upon hearing that there were

24    shooting victims, Officers Mercado and Stimson activated their police lights and sirens, intending

25

26    _____

27    [1] There was a misdemeanor bench warrant out for Ms. Vasquez's arrest at the time of the incident.
      Am. Compl. ¶ 17.
      Case No.: 5:19-cv-08441-EJD

28    ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DIMISSING
      PLAINTIFFS' STATE LAW CLAIMS

1      to pull over Ms. Vasquez on the freeway.  Mot. at 3.  However, Ms. Vasquez did not comply and

2      attempted to flee.  *Id.*; Mercado Dep. at 41.  The Officers began pursuit.  Mot. at 3.  Ms. Vasquez

3      continued on Highway 280 North and then took Highway 17 South.  *Id.*  She then exited at

4      Hamilton Avenue and drove east.  *Id.*

5             The Officers observed Ms. Vasquez swerve into oncoming traffic and reach speeds up to

6      92 miles per hour.  *Id.*; Radio Traffic Clip, at 9:27-9:29.  The Officers reported "no traffic" to

7      "moderate traffic" throughout the chase, which lasted approximately six and a half minutes.  *Id.*;

8      Pls.' Statement of Facts at 2; Radio Traffic Clip, at 10:32-10:42.  After turning onto Leigh

9      Avenue, Ms. Vasquez crashed into a chain-link fence outside of Sherman Oaks Elementary

10     School.  Mot. at 4; Opp'n at 2–3.  She was unable to move her vehicle, which had become

11     ensnared in the fence.  Mot. at 4.  There were no people on campus at this time because it was

12     holiday break.  Mercado Dep. at 55.

13            Within seconds, Officer Mercado arrived at the scene first and parked his patrol vehicle

14     parallel to Ms. Vasquez.  Opp'n at 3.  Officer Koska arrived next and parked his patrol vehicle

15     behind Ms. Vasquez.  *Id.*  Officer Anaya arrived and parked his patrol SUV on the street in the

16     direction Ms. Vasquez faced.  *Id.*  He later moved his SUV on the sidewalk in front of Ms.

17     Vasquez's Camry to block her primary escape route.  *Id.*  Officer Stimson arrived, similarly

18     parking his vehicle in front of Ms. Vasquez's Camry.  *Id.*  In addition, Ms. Vasquez's vehicle was

19     obstructed by a metal sign pole on the sidewalk to the front-left of Ms. Vasquez's car.  Opp'n at 3.

20            Officer Mercado, who had arrived at the scene first, exited his patrol vehicle, drew his gun,

21     and yelled twice for Ms. Vasquez to "stay" in the car.  Pls.' Statement of Facts at 5; Mercado

22     Body-Worn Camera ("BWC"), Ex. 3 at 6:25-6:30.  Ms. Vasquez remained in her vehicle but

23     attempted to dislodge it by reversing; she momentarily stopped but then began accelerating as

24     Officer Mercado took a step or two towards Ms. Vasquez's vehicle with his weapon drawn.

25     Mercado BWC, Ex. 3 at 6:30-6:35.  Two Officers warned Ms. Vasquez that she will be shot if she

26     does not cease flight.  *Id.* at 6:36-6:42; 6:50-52.  At multiple points Officer Koska commanded the

27

28     ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DIMISSING
       PLAINTIFFS' STATE LAW CLAIMS

United States District Court
Northern District of California

1    driver to "get out of the vehicle."  Koska BWC, at 1:30-1:33; 1:42-1:45.  Around this time Officer

2    Mercado asked his fellow officers whether anyone had a "40" (referring to a 40 millimeter which

3    is a "less lethal weapon[] that could be used to break the window.").  *Id.* at 6:45-6:48; Mot. at 4.

4    Ms. Vasquez remained in her vehicle but continued to accelerate and reverse her vehicle to

5    maneuver herself out of the fence.  Mercado Dep. at 51, 54.

6            Simultaneously, Officer Stimson had exited his patrol vehicle and stood to Officer

7    Mercado's right.  Opp'n at 3; Stimpson Dep., Dkt. No. 62-2 at 45-48.  Officer Koska also exited

8    his vehicle and stood to the right of Officer Mercado.  Opp'n at 3–4; Koska Dep., Dkt. No. 62-3,

9    at 34-35.  Officer Anaya exited his patrol car which he parked perpendicular to the front of Ms.

10   Vasquez's vehicle and stood approximately two to three feet behind it.  Anaya Dep., at 59.  He did

11   not communicate his location to the other officers.  *Id.* at 60.  The other Officers knew that he was

12   present, but none of them knew with any certainty where Officer Anaya was positioned.  Mercado

13   Dep. at 55; Stimson Dep. at 75; Koska Dep. at 41.  Eventually, Ms. Vasquez dislodged her vehicle

14   and lurched forward, hitting Officer Anaya's patrol vehicle.  Mot. at. 4; Opp'n at 5.  Officer Anaya

15   observed his patrol vehicle "jerk back toward [him]."  Anaya Dep. at 60.  All four officers fired

16   their weapons upon impact.  Plaintiffs allege that multiple shots were fired in the second after Ms.

17   Vasquez's car had seemingly stopped.  Mercado BWC, at 7:21-7:26.  Plaintiffs allege that Ms.

18   Vasquez was shot fifteen times and thirty-six shots were fired in total.  Am. Compl. ¶ 19; Opp'n,

19   Dkt. at 4.

20           During their depositions, all the officers stated that they had received training on the use of

21   deadly force and that their decision to use deadly force arose from the totality of the

22   circumstances.  Approximately one minute had elapsed from when the first officer arrived at the

23   scene and the officers shot Ms. Vasquez.  Mot. at. 5.  She died at the scene.  *Id.*  No weapons were

24   recovered from her vehicle.  *Id.*

25   **II.    LEGAL STANDARD**

26           Summary judgment is available where the moving party demonstrates "no genuine dispute

27

28   Case No.: 5:19-cv-08441-EJD
     ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DIMISSING
     PLAINTIFFS' STATE LAW CLAIMS
                                                     4

United States District Court
Northern District of California

1    as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

2    56(a).  Material facts are those that are "relevant to an element of the claim or defense" or that

3    could affect the outcome of the suit.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809

4    F.2d 626, 630 (9th Cir. 1987); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A

5    dispute is "genuine" if there is sufficient evidence that a reasonable fact finder could find for the

6    nonmoving party.  *Anderson*, 477 U.S. at 242.  "Disputes over irrelevant or unnecessary facts will

7    not preclude a grant of summary judgment."  *Id.*

8         In deciding a motion for summary judgment, the Court must view the evidence in a light

9    most favorable to the non-moving party.  *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir.

10   1999).  However, the non-moving party "must produce at least some significant probative

11   evidence tending to support the complaint."  *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (quotations

12   and citations omitted).  Summary judgement should be "granted sparingly" in cases involving

13   excessive force because the balancing tests involved in making such a determination "nearly

14   always requires a jury to sift through disputed factual contentions, and to draw inferences

15   therefrom." *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003).

## III.    DISCUSSION

### A.    Fourth Amendment Cause of Action

18        A Fourth Amendment seizure occurs when there is a "governmental termination of

19   freedom of movement through means intentionally applied."  *Jensen v. City of Oxnard*, 145 F.3d

20   1078, 1083 (9th Cir. 1998).  It occurs "whenever [an officer] restrains the individual's freedom to

21   walk away."  *Robins v. Harum*, 773 F.2d 1004, 1009 (9th Cir. 1985) (citing *Garner*, 471 U.S. at

22   7).  An intentional shooting by a police officer constitutes a seizure for Fourth Amendment

23   purposes.  *Jensen*, 145 F.3d at 1078.

#### 1.    Governing Authority

25        Decedent brings the first cause of action for excessive force pursuant to Section 1983,

26   which "imposes liability upon any person, who, acting under the color of law, deprives another of

United States District Court
Northern District of California

United States District Court
Northern District of California

a federally protected right." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988); 42 U.S.C. § 1983.  A plaintiff alleging a claim under § 1983 must show that (1) the defendants acted under state law and (2) the defendants deprived plaintiff of a right secured by the Constitution.  *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986), *cert. denied*, 479 U.S. 1054 (1987).  "In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force."  *Graham v. Connor*, 490 U.S. 386, 394 (1989).

Here, the first prong is satisfied because the SAC alleges that Defendant Officers were in uniform and acting within the scope of their employment as police officers with the SJPD.  *See* SAC ¶¶ 5-8.  The second prong is also satisfied because Decedent's cause of action arises under the Fourth Amendment through apprehension by deadly force.  *Tennessee v. Garner*, 471 U.S. 1, 7 (1985) ("[T]here can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment.").

### 2.    Objectively Reasonable

"Apprehension by deadly force is a seizure subject to the Fourth Amendment's reasonableness requirement."  *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010) (citing *Graham*, 490 U.S. at 395).  To determine whether the use force used to seize a plaintiff under the Fourth Amendment was excessive, a court must "assess whether it was objectively reasonable 'in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation.'"  *Gregory v. Cnty. of Maui*, 523 F.3d 1103, 1106 (9th Cir. 2008) (quoting *Graham*, 490 U.S. at 397).  This inquiry requires a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Id.* at 396 (internal quotation marks omitted).  Furthermore, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Case No.: 5:19-cv-08441-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DIMISSING PLAINTIFFS' STATE LAW CLAIMS

United States District Court
Northern District of California

1    *Graham* sets forth a three-prong analysis to determine whether an officers' actions were

2    objectively reasonable.  *Graham v*, 490 U.S. at 396–97.  First, the Court "assess[es] the gravity of

3    a particular intrusion on Fourth Amendment interests by evaluating the type and amount of force

4    inflicted."  *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003).  Second, the Court considers

5    the governmental interests at stake by evaluating the totality of the circumstances, which includes:

6    "(1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the

7    safety of the officers or others, and (3) whether he was actively resisting arrest or attempting to

8    evade arrest by flight."  *Id.*  Finally, the Court must weigh "the gravity of the intrusion on the

9    individual against the government's need for that intrusion."  *Id.*  The most important of these

10   factors is the safety of the officers and the public.  *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir.

11   2011) (en banc).

### a.      Severity of the Intrusion

13   Turing to the first *Graham* factor, the Officers used the highest level of force in the present

14   action.  "The use of deadly force implicates the highest level of Fourth Amendment interests both

15   because the suspect has a fundamental interest in his own life and because such force frustrates the

16   interest of the individual, and of society, in judicial determination of guilt and punishment."

17   *Garner*, 471 U.S. 1 at 8.  Plaintiffs allege that the officers fired thirty-six shots, killing Ms.

18   Vasquez.  The severity of the intrusion on Ms. Vasquez's Fourth Amendment interests is therefore

19   "extreme" and "unmatched."  *A.K.H. ex rel. Landeros v. City of Tustin*, 837 F.3d 1005, 1011 (9th

20   Cir. 2016).

21   The Officers acknowledge that they "unquestionably used the highest level of force in their

22   effort to address the threat they believed Decedent posed."  Mot. at 6.

### b.      Government Interest

24   The government's interest in the use of force, or the second *Graham* factor, is determined

25   by evaluating the objective reasonableness of the intrusion through the attendant factors.  *Glenn*,

26   340 F3d at 964.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

### i.      Severity of the Crime

Plaintiffs contend that Ms. Vasquez was not involved in the shooting for which she was being pursued.  Opp'n at 10.  The Officers were only certain that Ms. Vasquez did not pull over during the police stop and that she was driving a stolen vehicle.  Plaintiffs assert that, "[t]hus, Ms. Vasquez['s] suspected crimes were related solely to property crimes."  *Id.*

Defendants assert that they had probable cause to believe Ms. Vasquez posed a risk of serious harm to the public based on her suspected involvement in an earlier crime, the drive-by shooting.[2]  An officer who has probable cause may prevent a fleeing suspect's escape using deadly force.  *Garner*, 471 U.S. at 11–12.  For Fourth Amendment purposes, probable cause exists where "the totality of the circumstances known to the arresting officers" supports the conclusion that "there was a fair possibility that [the suspect] had committed a crime."  *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008) (quotation marks omitted) (quoting *United States v. Smith*, 790 F.2d 789, 792 (9th Cir.1986)).  This is true where a suspect threatens an officer with a weapon or where an officer believes that the suspect has "committed a crime involving the infliction or threatened infliction of serious physical harm."  *Garner*, 471 U.S. at 11

Defendants liken Ms. Vasquez's case with *Forrett v. Richardson*, where the Ninth Circuit affirmed the district court's granting of judgment as a matter of law, finding that the officers had probable cause to arrest Forrett because he matched an eyewitness description of a suspected armed robber.  112 F.3d 416, 418 (9th Cir. 1997), *superseded by rule on other grounds as stated in Chroma Lighting v. GTE Prods. Corp.*, 127 F.3d 1136 (9th Cir. 1997) (order).  After the robbery was complete and Forrett left the scene, a victim called 911 and described his appearance, the truck he was driving, and his weapon.  *Id.*  Shortly after an officer located him, Forrett abandoned his truck and fled on foot, and a police chase ensued.  *Id.*  The officers eventually cornered him against a wooden fence.  *Id.*  They commanded Forrett to surrender, but Forrett later

---

[2] Plaintiffs dispute that the Officers had probable cause to believe that Ms. Vasquez had committed the drive-by shooting based on her vehicle matching the eyewitness description but provide no reasoning as to why.  *See* Pls.' Statement of Facts, Dkt. No. 63 at 3–4, 7.

United States District Court
Northern District of California

1   testified that he could not discern what the officers were shouting.  *Id.*  While Forrett hesitated, the

2   officers fired several shots at him but missed.  *Id.*  He began to climb until he was shot by an

3   officer.  *Id.* at 418–19.  He subsequently brought § 1983 action against the officers alleging

4   excessive force.  *Id.*

5         The district court's finding of probable cause turned on the fact that Forrett matched the

6   description of the burglar who shot two victims earlier that evening in the same area, and

7   therefore, the officers' believed that Forrett had committed a crime involving the infliction of

8   serious physical harm.  *Id.* at 420.  There are important similarities between *Forrett* and the

9   present case that warrant a finding that the Officers had probable cause to believe that Ms.

10  Vasquez had committed a crime involving the serious infliction of physical harm.  Like Forrett,

11  Ms. Vasquez's vehicle matched the description of the suspected shooter's vehicle according to an

12  eyewitness account, and she was driving in the proximity of the scene of the crime.  The Officers

13  responded to a witness call involving a drive-by shooting and mistakenly targeted Ms. Vasquez

14  based on a witness's description of the vehicle driven by the shooters.  Mot. at 2, 11.  The color of

15  the suspected vehicle matched Ms. Vasquez's white Toyota Camry, and the make and model of

16  the vehicles (Nissan and Toyota sedans) were also similar.  *Id.* at 11.  Officer Mercado observed

17  Ms. Vasquez's vehicle leaving the general area of where the shooting had occurred.  As a result,

18  the Officers' believed that Ms. Vasquez was involved in the shooting, likely had the shotgun in

19  her vehicle, and thus she presented an ongoing threat to the public.

20        Accordingly, the underlying drive-by shooting was a violent offense involving the use of a

21  deadly weapon and thus the severity of the crime weighs in Defendants' favor.

22                  **ii.**      **Immediate Threat of Serious Harm**

23        The "most important" of the *Graham* factors is "whether the suspect posed an immediate

24  threat to the safety of the officers or others."  *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013).

25  However, a "suspect need not be armed or pose an immediate threat to the officers at the time of

26  the shooting" where a suspect previously "harmed or threatened infliction of serious physical

27   

28  Case No.: 5:19-cv-08441-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DIMISSING
PLAINTIFFS' STATE LAW CLAIMS

1    harm." *Forrett*, 112 F.3d at 420.  "Thus, if the suspect threatens the officer with a weapon or there

2    is probable cause to believe that he has committed a crime involving the infliction or threatened

3    infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and

4    if, where feasible, some warning has been given." *Id.* (quoting *Garner*, 471 U.S. at 11–12)).

5    Under these circumstances, "when the suspect is known to have 'committed a crime involving the

6    infliction or threatened infliction of serious physical harm'" the suspect's "mere being at large

7    poses an inherent danger to society." *Scott v. Harris*, 550 U.S. 372, 382 (2007) (quoting *Garner*,

8    471 U.S. at 11–12).

9         Plaintiffs' primary contention is that Ms. Vasquez did not pose a threat to the Officers or

10   the public *at the time the shooting occurred*.[3]  Opp'n at 12–13 (emphasis added) (citing *Smith v.*

11   *Cnty. of Riverside*, No. 16-CV-00227-JGB-KKX, 2018 WL 5880610, at *7 (C.D. Cal. June 15,

12   2018), *order clarified*, No. 16-227-JGB-KKX, 2018 WL 5861516 (C.D. Cal. Sept. 18, 2018)

13   ("This Court has consistently maintained that use of deadly force may be justified at one point of

14   an encounter with a suspect but not at a subsequent point.")).  Plaintiffs contend that a suspect

15   must pose an "imminent threat" at the time deadly force is used to justify the force.  *Est. of*

16   *Richard Risher v. City of Los Angeles*, No. 17-CV-995-MWF-KKX, 2020 WL 5377306, at *1

17   (C.D. Cal. July 29, 2020) (denying the motion for summary judgment because "[t]he

18   reasonableness of these Defendants' uses of force turns on whether Risher was actively posing a

19   threat *when the challenged forces were used*, not whether he was a threat earlier in the chase.").

20   Plaintiffs argue that, even if a suspect poses a threat at an earlier point in time, deadly force is not

21   justified at a later point in the pursuit if the suspect no longer poses a threat to the officers or the

22

23   _____

24   [3] In *Risher* the Ninth Circuit concluded that defendants lacked probable cause where the FBI
     agents fired their weapons at a fleeing suspected gang member whom the agents did not know if
     he had committed any of the violent shootings the preceding weeks.  *See Est. of Risher v. City of*
25   *Los Angeles*, No. 17-CV-995-MWF-KKX, 2020 WL 5377306, at *12 (C.D. Cal. July 29, 2020).
     Because defendants could not establish that the officers had probable cause, the court noted that
26   defendants must show how plaintiffs posed an immediate threat of serious physical harm.  *Id.* at
     *9.  These circumstances differ from those of Ms. Vasquez where the Officers had probable cause.

27   Case No.: 5:19-cv-08441-EJD

28   ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DIMISSING
     PLAINTIFFS' STATE LAW CLAIMS

United States District Court
Northern District of California

public.  *Id.* at 10 (citing *Harris v. Roderick*, 126 F.3d 1189, 1203 (9th Cir. 1997) ("[T]he fact that [the suspect] had committed a violent crime in the immediate past is an important factor but it is not, without more, a justification for killing him on sight.").

The gravamen of Plaintiffs argument is that Ms. Vasquez did not actually pose a risk of immediate serious harm to the Officers or the public at the time of the shooting because (1) she was completely surrounded and therefore could not escape and (2) after she crashed into the fence and resumed her flight, her vehicle was not pointed towards an Officer when she accelerated in the moments leading up to the shooting.[4]  More specifically, Plaintiffs contend that the public was not in danger at the time the Officers shot Ms. Vasquez because she was surrounded by patrol vehicles and unable to move her vehicle more than a few feet in any one direction at low speeds.  *Id.* at 15. They assert that all feasible escape routes were effectively blocked by the combination of the patrol vehicles, the fence, and the sign pole.  *Id.*  Because there was no way for Ms. Vasquez to escape, she could not pose an immediate threat to of serious harm to the general public.  *Id.* at 15. Even if Ms. Vasquez could escape, Plaintiffs argue that none of the Officers were in her vehicle's path when she accelerated at the time of her shooting.  Under these circumstances Plaintiffs allege

---

[4] Plaintiffs also argue that Ms. Vasquez did not pose a threat of serious harm because she was mistakenly identified and not involved in the earlier drive-by shooting.  However, a mistaken identification based on an eyewitness description does not lessen the reasonableness of the Officers' actions in using deadly force based on what they believed at that time.  *See Clark v. McGuire*, No. 12-CV-2159-LKK-KJN, 2014 WL 3058454 (E.D. Cal. July 3, 2014), *report and recommendation adopted*, No. 12-CV-2159-LKK-KJN, 2014 WL 4276086 (E.D. Cal. Aug. 29, 2014), *rev'd and remanded*, 693 F. App'x 649 (9th Cir. 2017).

Furthermore, Plaintiffs challenge the Officers' use of deadly force in light of the SJPD policy on the use of deadly force in vehicular pursuits.  Officer Stimson testified that SJPD training instructs that officers should not put themselves in the way or the path of a moving vehicle and "should generally not shoot at a moving vehicle when they are trying to escape except in extraordinary circumstances where [] [the officer] believe[s] that the person [] [they're] shooting at in the vehicle will cause immediate death to – great bodily injury or death to somebody else if they were to escape."  Stimson Dep. at 73.  However, the Court need not consider the SJPD's policy here because "[u]nder § 1983, the issue is whether [an] Officer [] violated the Constitution, not whether he should be disciplined by the local police force.  A city can certainly choose to hold its officers to a higher standard than that required by the Constitution without being subjected to increased liability under § 1983."  *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992); *see also Ford v. Childers*, 855 F.2d 1271 (7th Cir.1988) (en banc).

Case No.: 5:19-cv-08441-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DIMISSING
PLAINTIFFS' STATE LAW CLAIMS

United States District Court
Northern District of California

1   that the Officers lacked an objectively reasonable basis to believe that deadly force was justified as

2   a matter of law.  *Id.*

3        Defendants disagree and contend that, based on what was known to the Officers at the

4   time, they had probable cause to believe that Ms. Vasquez posed a risk of serious harm to the

5   public that warranted the use of deadly force to prevent her escape.  They rely on *Forrett*, where

6   the Court explained that the officers did not need to capture Forrett at a later time using less deadly

7   means or exhaust every alternative before using deadly force but noted that "[t]he option must be

8   reasonable in light of the community's strong interests in security and preventing further harm."

9   *Id.*  The district court had reasoned that, "[b]ecause Forrett eluded capture for an hour by climbing

10  fences, hiding in sheds, removing identifiable clothing, and continued flight even after the officers

11  had fired first and second rounds at him… the officers "had probable cause to believe that Forrett

12  was willing to use violent means to achieve his ends."  *Id.* at 421.   The Ninth Circuit concluded

13  that, since the officers believed that Forrett was involved in a crime involving the serious infliction

14  of physical harm and his "testimony established that Forrett was trying to escape and that the

15  defendants warned him before using deadly force," then "[t]he only remaining issue under *Garner*,

16  then, is whether the use of deadly force was necessary to prevent Forrett from escaping."  *Id.* at

17  420.

18        Moreover, like *Forrett*, Ms. Vasquez also eluded capture and attempted to escape even

19  after being surrounded by the police and warned by the Officers that they would shoot if she did

20  not cease.  In *Forrett*, Plaintiff conceded—and the Ninth Circuit concluded that—based on similar

21  underlying facts, the police had probable cause to believe that he had committed a crime involving

22  the infliction of serious harm and "that Forrett posed a serious threat of harm to them or others."

23  *Forrett*, 112 F.3d at 420.  *see also Clark v. McGuire*, No. 12-CV-2159-KJN, 2014 WL 3058454

24  (E.D. Cal. July 3, 2014), *report and recommendation adopted*, No. 12-CV-2159-KJN, 2014 WL

25  4276086 (E.D. Cal. Aug. 29, 2014), *rev'd and remanded*, 693 F. App'x 649 (9th Cir. 2017)

26  (concluding that the district court correctly found that the officers had probable cause to believe

27  Case No.: 5:19-cv-08441-EJD

28  ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DIMISSING
PLAINTIFFS' STATE LAW CLAIMS

United States District Court
Northern District of California

1   that plaintiff, a suspect matching the description of the shooter who later was determined innocent,

2   posed a serious risk of harm despite the plaintiff's claim that he had his hands in the air and yelled

3   "I'm unarmed" at the time of the shooting).

4        Defendants also contend that there was an "immediate threat" to the Officers' safety at the

5   time of the incident.  While "a simple statement by an officer that he fears for his safety or the

6   safety of others is not enough," the record provides sufficient clarity as to what Defendants'

7   believed and observed at the time of the incident.  *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th

8   Cir. 2001) (noting that "there must be objective factors to justify such a concern.").  After the

9   crash, Ms. Vasquez maneuvered her vehicle free from the fence and accelerated towards her left.

10   Plaintiffs allege that she aimed her vehicle for the "gap" between the Officers and the patrol

11   vehicles but hit Officer Anaya's patrol car.  During their depositions, Officers Mercado, Stimson,

12   and Koska claimed that they discharged their weapons upon impact to protect the lives of their

13   fellow officers, particularly Officer Anaya.  *See* Stimson Dep. at 70; Mercado Dep., at 61–62;

14   Koska Dep. at 40.

15        There are, however, discrepancies in the Officers recounting of their decisions to employ

16   deadly force.  For example, Officer Stimson told homicide investigators that Ms. Vasquez drove

17   straight towards him and the other officers.  Stimson Dep. at 68, 70.  During his deposition he

18   stated that he discharged his firearm because, in addition to trying to prevent Ms. Vasquez's

19   escape, he feared for his life and the lives of his fellow officers.  *Id.*  He also stated that he

20   believed that Officer Anaya was somewhere to the left of Officer Mercado, assuming that he was

21   behind his patrol vehicle though he could not see him.  *Id.* at 74.  Officer Mercado provided

22   similar justifications for employing deadly force: to prevent Ms. Vasquez's escape and to protect

23   himself and his fellow officers.  Mercado Dep., at 57, 61–62.  He stated he was afraid that "we

24   would be ran over."  Mercado Dep. at 55.  Officer Mercado admitted that he could not account for

25   everyone at the scene, but he could "hear voices to the left of me where the vehicle was driving

26   towards" indicating that one or more officers were to his left.  *Id.* at 57.  He further testified that

27

28   
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DIMISSING
PLAINTIFFS' STATE LAW CLAIMS

United States District Court
Northern District of California

1    Ms. Vasquez's vehicle was still moving at the time he discharged his weapon but that "[i]f the

2    vehicle [had] stopped after colliding with the patrol vehicle, I probably would not have used

3    deadly force." *Id.* at 63, 65.

4         Officer Koska stated that he shot Ms. Vasquez upon the impact with Officer Anaya's

5    patrol vehicle to prevent her escape.  Koska Dep. at 39.  In addition, he testified that he discharged

6    his weapon to protect his fellow officers, particularly Officer Mercado to his left.  *Id.* at 40.  He

7    explained, "[t]he way the wheels, the front wheels were angled and the way the engine was

8    revving, it could have come towards Officer Mercado or myself or Officer Stimson or, come to

9    find out, it was Officer Ananya to my far left."  *Id.*  Officer Koska was not aware if Officer Anaya

10   was behind his vehicle and knew only that he was located somewhere to Officer Koska's left.  *Id.*

11   When asked whether he believed that Ms. Vasquez was trying to escape or trying to run him over,

12   Officer Anaya responded "I think both. She was trying to escape, and if she needed to run me

13   over, she would have."  Anaya Dep., at 60.  None of the Officers knew with certainty where

14   Officer Anaya was located when Ms. Vasquez hit his patrol vehicle, and the Officers' testimony

15   seemingly contradicts itself to the extent that, if Ms. Vasquez's vehicle was pointed in Officer

16   Mercado's direction (towards the left or almost parallel to Officer Mercado), it would certainly not

17   be pointed towards Officer Anaya's vehicle parallel to Ms. Vasquez's front bumper.

18        However, the Court must consider "the totality of the circumstances from the perspective

19   of a 'reasonable officer on the scene.'"  *Plumhoff v. Rickard*, 572 U.S. 765, 766 (2014) (quoting

20   *Graham*, 490 U.S. at 396).  In doing so the Court recognizes "that police officers are often forced

21   to make split-second decisions about the amount of force necessary in a particular situation."

22   *Deorle*, 272 F.3d at 1281.  Such decisions "are often… split second judgments [made] in

23   circumstances that are tense, uncertain, and rapidly evolving."  *Id.* at 1283 (quoting *Graham*, 490

24   U.S. at 396–97).  While the Officers individually may have believed that different colleagues were

25   in Ms. Vasquez's path at the time of the incident, they were positioned in different locations and

26   standing at different angles with varying perspectives.  It was dark and the headlights on the

27

28

1   vehicles were the primary source of light.  Throughout the entire encounter Ms. Vasquez refused

2   to cease her flight, hitting Officer's Anaya's patrol vehicle in the process as she tried to accelerate

3   through the "gap" between the patrol vehicles and the sign pole.  Accordingly, "[u]nder the

4   circumstances when the shots were fired, all that a reasonable officer could have concluded from

5   [] [decedent's] conduct was that [s]he was intent on resuming [] [her] flight," regardless of

6   whether her actions put the Officers in the path of vehicle during her attempted escape.  *Plumhoff*,

7   572 U.S. at 766.  Under these circumstances, the Court finds that there was a threat of serious

8   harm to the Officers safety.

9          Defendants also direct the Court to *Plumhoff*, in which the Supreme Court considered

10   analogous circumstances where a high-speed car chase ended with decedent spinning out in a

11   parking lot.  *Id.* at 765 (noting that decedent's "outrageously reckless driving—which lasted more

12   than five minutes, exceeded 100 miles per hour, and included the passing of more than two dozen

13   other motorists—posed a grave public safety risk.").  Despite decedent's bumper being flush

14   against a patrol car, decedent continued to maneuver his car and accelerate in an attempt to resume

15   flight.  *Id.*  An officer at the scene fired three shots upon the vehicles' contact.  Decedent

16   continued to drive away, and the officers fired twelve more shots, striking decedent and his

17   passenger. *Id.*  The Supreme Court reversed the district court and Sixth Circuit, holding that the

18   officers acted reasonably in using deadly force and that the officers "did not fire more shots than

19   necessary to end the public safety risk" given the circumstances.  *Id.* at 766.  The Court noted that,

20   "during the 10-second span when all the shots were fired, [decedent] Rickard never abandoned his

21   attempt to flee and eventually managed to drive away." *Id.*  Likewise, Ms. Vasquez continued her

22   attempts at flight even after the crash when she was surrounded by police.  The Officers fired their

23   weapons only after, despite being warned to stop, Ms. Vasquez's vehicle lurched forward and hit

24   Officer Anaya's patrol vehicle as she tried to escape through the gap between the vehicles.

25          Plaintiffs cite to *Orn v. City of Tacoma* to support their argument that Defendants could

26   have avoided the danger by stepping out of Ms. Vasquez's vehicle path.  949 F.3d 1167, 1175

27   Case No.: 5:19-cv-08441-EJD

28   ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DIMISSING
     PLAINTIFFS' STATE LAW CLAIMS

United States District Court
Northern District of California

United States District Court
Northern District of California

(2020); Opp'n at 14 (listing similarities between the Officers' positioning and plaintiff's vehicle positioning in *Orn*, which supported a finding that the officer in Orn "lacked an objectively reasonable basis to fear for his own safety.").  However, *Orn* is distinguishable; unlike with Ms. Vasquez, the officers in *Orn* did not have a reasonable basis to believe that plaintiff had "committed a crime involving the infliction or threatened infliction of serious physical harm."  *Id.* 1174 (citing *Garner* 471 U.S. at 11).

In *Orn* a motorist engaged in a low-speed police chase before being surrounded and shot by police in a parking lot.[5]  *Id.*  at 1171.  A police chase had ensued after an officer tried to pull over Orn for driving without his headlights on at night.  *Id.*  Rather than pull over, Orn fled from police and drove to his apartment complex.  *Id.* at 1171.  Police managed to block Orn's path in the parking lot of the complex, Orn directed his vehicle toward a narrow opening between the patrol vehicles and attempted to escape.  *Id.* at 1172.  According to Orn's recounting of events, Orn clipped the officers' patrol vehicles at low speeds, and, upon impact one of the officers began firing multiple rounds at him.  *Id.*  Orn was hit and sustained severe injuries.  *Id.*  The parties dispute whether Orn posed a risk of serious harm to the officers at the time specifically whether Officer Clark was in the path of Orn's vehicle at the time of shooting and there was no body-worn camera video, as is the case here.  *Orn*, 949 F.3d at 1175.  In construing the facts in the light most favorable to Orn, the Court concluded that "[Officer] Clark had no reasonable basis to fear for his own safety" because the vehicle was driving away from the officer and Officer Clark "simply could have avoided any risk of being struck by simply taking a step back."  *Id.* at 1174–75.  The Ninth Circuit noted that, since Orn did not pose a risk to the officer, "[t]he remaining question is whether Clark had an objectively reasonable basis for believing that Orn posed a threat of physical

---

[5] The police chase in *Orn* differs from Vasquez because it was "low-speed," where Orn traveled 25-35 miles per hour and "stopped at traffic lights and stop signs"—compared to Ms. Vasquez allegedly driving "dangerously," in the lanes of oncoming traffic, and at excessive speeds.  949 F.3d at 1172; Pls.' Statement of Facts, Dkt. No. 63 at 2.  Plaintiffs dispute the Officers' recounting to the extent that "[d]uring the initial portion of the pursuit, Ms. Vasquez drove at reasonable speeds."  *Id.*

Case No.: 5:19-cv-08441-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DIMISSING
PLAINTIFFS' STATE LAW CLAIMS

1    harm to others." *Id.* at 1176.

2          Critical to the case's outcome was the Court's finding that the officers did not have a

3    reasonable basis to believe that plaintiff had "committed a crime involving the infliction or

4    threatened infliction of serious physical harm "[Officer] Clark had no reason to believe that Orn

5    had a firearm, and in fact he did not." *Id.* at 1172.  The police chase originated from a traffic stop

6    and plaintiff was not suspected of committing a violent prior offense.  "[T]o warrant the use of

7    deadly force, a motorist's prior interactions with police must have demonstrated that 'he either

8    was willing to injure an officer that got in the way of escape or was willing to persist in extremely

9    reckless behavior that threatened the lives of all those around.'"  *Id.* at 1177 (quoting *Latits v.*

10   *Phillips*, 878 F.3d 541 (6th Cir. 2017)).  The Court further reasoned that "[a] fleeing suspect's

11   escape can pose a threat to the public when police have probable cause to believe that the suspect

12   has committed a violent crime."  *Orn*, 949 F.3d at 1176.  Based on these facts, and in taking the

13   plaintiff's version of events, the Ninth Circuit concluded that the officers "had no basis for

14   believing that Orn would pose a threat of serious physical harm to the general public if permitted

15   to escape."[6] *Id.* at 1177.

16         Moreover, Defendants' contest Plaintiffs' characterization of Ms. Vasquez as "completely

17   surrounded" by patrol vehicles such that she had no feasible means of escape, but argue that,

18   regardless, it would not change the outcome in this instance.  Defendants contend that—as was the

19   case in *Forrett*—a suspect could be surrounded by police but,

20             [e]ven if [the suspect]'s capture was inevitable, it does not follow on
               these facts that the use of deadly force was unnecessary.  The Fourth
21             Amendment does not require law enforcement officers to exhaust

22   _____

23   [6] Orn and Officer Clark's version of events differed in two respects: the manner and speed in
     which Orn maneuvered around the officers' vehicles right before the shooting and where Officer
24   Clark was standing at the time.  *Id.* at 1173.  The Court concluded that "[a]ccording to Orn's
     version of events, Clark was never at risk of being struck by Orn's vehicle because he was never
     in the vehicle's path of travel."  *Id.* at 1174–75.  Thus "Orn's testimony provides an account of the
25   shooting in which Clark was never at risk of being struck by Orn's vehicle."  *Id.* at 1175.
     However, the fundamental difference between *Orn* and the present case is that the Officers in
26   Vasquez—regardless of whether the Officers' themselves were at risk—had reason to believe that
     Ms. Vasquez posed a danger to the safety of the public should she escape based on probable cause
27   that she was involved in a violent crime (the drive by shooting) earlier that evening.

     Case No.: 5:19-cv-08441-EJD
28   ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DIMISSING
     PLAINTIFFS' STATE LAW CLAIMS

1

2

> every alternative before using justifiable deadly force. The alternative
> must be reasonably likely to lead to apprehension before the suspect
> can cause further harm.

*Forrett*, 112 F.3d at 420.  After the crash, the Officers surrounded Ms. Vasquez while she

attempted to maneuver out of the fence to escape, demanded that she stop, and warned her that

they would fire their weapons.  Defendants posit that "[b]ased on what the Defendant Officers

believed and had themselves witnessed of Decedent's behavior from the time the pursuit began,

the only reasonable conclusion was that she would continue to do whatever it took to escape."

Reply at 8.  Thus the Officers assert that deadly force was necessary to prevent Ms. Vasquez from

either shooting at them or otherwise escaping and posing a risk to the public.

Plaintiffs counter, however, that there was no significant risk to the public to necessitate

the use of deadly force because there were no bystanders in the vicinity.  Opp'n at 12.  School was

closed for holiday and Plaintiffs allege that very little traffic was on the road at the time of the

incident at approximately 2:00 a.m. on Christmas.  *Id.*  Plaintiffs distinguish *Forrett* noting in that

case bystanders were in the vicinity at the time of the chase—it occurred in a residential

neighborhood and nearby an elementary school while children were in attendance.  Opp'n at 12.

*Id.*  Plaintiffs argue that, in *Forrett*, "[t]he Court emphasized that this [scenario] created a high

probability that the plaintiff would take an innocent bystander hostage" and therefore posed a

more immediate threat that necessitated the use of deadly force.  *Id.* (quoting *Forrett*, 112 F.3d at

421).  Defendants contend, however, that this fact was not dispositive in *Forrett* and that people—

particularly cars—were in fact "out and about" during the incident, asserting that Ms. Vasquez

would have posed a threat to the San Jose community, particularly other drivers, had she eluded

capture.  Reply at 3, 11.  For the reasons discussed, the Court agrees.

When construed in the light most favorable to Plaintiffs, the evidence supports a finding,

that Ms. Vasquez "posed an immediate threat to the safety of the officers or others." *Graham*, 490

U.S. at 396.

### c.    Balancing of the Intrusion Against the Interest

Finally, the Court must consider "whether the degree of force used was warranted by the

Case No.: 5:19-cv-08441-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DIMISSING
PLAINTIFFS' STATE LAW CLAIMS

1    governmental interests at stake."  *Deorle v. Rutherford*, 272 F.3d 1272, 1282 (9th Cir. 2001).

2         Here, the totality of the circumstances demonstrates that the Officers had probable cause to

3    believe that Ms. Vasquez was involved in a drive-by shooting and therefore posed a risk of harm

4    to the public.  The Officers tried to initiate a traffic stop of Ms. Vasquez and when she did not

5    yield pursued her in a high-speed chase; after she crashed her vehicle, the officers attempted to

6    blockade her vehicle using their patrol vehicles; they warned Ms. Vasquez to cease flight, stating

7    that they would discharge their weapons if she did not; despite being surrounded, Ms. Vasquez

8    continued to accelerate and attempted to escape for almost a minute before hitting Officer Anaya's

9    patrol vehicle, pushing it back towards him as she continued to accelerate.  "[T]he government's

10   need for the intrusion" in preventing the escape of a suspected armed felon who posed an ongoing

11   threat to the public outweighs the "gravity of the intrusion" under these circumstances.  This is

12   particularly true in situations where the safety of the officers and the public is at risk—as was the

13   case here.  *Mattos*, 661 F.3d at 441.

14        For the foregoing reasons, the Court finds there is not sufficient evidence in the record

15   upon which a reasonable jury could find that the Officers violated the Fourth Amendment by

16   fatally shooting Ms. Vasquez under such circumstances.  *Garner*, 471 U.S. at 8.  Accordingly, the

17   Officers did not violate Plaintiffs' Fourth Amendment rights.

18        **B.      Qualified Immunity**

19        Defendants also argue for entry of summary judgment in their favor because the Officers

20   are entitled to qualified immunity.  Even if the Officers' conduct had violated the Fourth

21   Amendment, Defendants would still be entitled to summary judgment based on qualified

22   immunity.

23        "The doctrine of qualified immunity protects government officials from liability for civil

24   damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or

25   constitutional right, and (2) that the right was 'clearly established' at the time of the challenged

26   conduct.'"  *Wood v. Moss*, 572 U.S. 744, 757 (2014) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731,

*United States District Court*
*Northern District of California*

735 (2011)).  It essentially "protects all but the plainly incompetent or those who knowingly violate the law."  *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam).  Thus even if the Officers' conduct was excessive their actions would be protected under qualified immunity because their conduct did not violate a clearly established right.  "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'"  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  And while this inquiry "do[es] not require a case directly on point… existing precedent must have placed the statutory or constitutional question beyond debate."  *al-Kidd*, 563 U.S. at 741.

The Supreme Court has cautioned that clearly established law should not be defined at a "high level of generality" and instead "must be particularized to the facts of the case."  *Kisela*, 138 S. Ct. at 1152; *White v. Pauly*, 137 S. Ct. 548, 552 (2017).  In the context of the Fourth Amendment, "[u]se of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue."  *Kisela*, 138 S. Ct. at 1153.  A defendant officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it."  *Plumhoff*, 572 U.S. at 778–79.  Plaintiff bears the burden of proof in showing that the right violated was clearly established at the time.  *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (1991).

The most analogous Ninth Circuit case, *Monzon*, found that the officers acted reasonably when they shot a driver who was accelerating towards them in his vehicle after a high-speed chase had ensued when the officers tried to initiate a traffic stop at 2 a.m.  *Monzon v. City of Murrieta*, 978 F.3d 1150 (9th Cir. 2020).  The Court reasoned that "[w]hile *Plumhoff* may instruct us that Monzon's reckless, high-speed driving posed a severe enough threat to public safety to itself

1   justify the use of deadly force, we need not reach that issue because here the use of deadly force

2   was reasonable to protect the officers whose lives were threatened by the accelerating van."

3   *Monzon*, 978 F.3d at 1161.  Moreover, *Monzon* post-dates this incident, lending credence to the

4   Court's finding that it was not clearly established that the Officers could not employ deadly force

5   under such circumstances.  *Brosseau*, 543 U.S. at 198 ("Because the focus is on whether the

6   officer had fair notice that her conduct was unlawful, reasonableness is judged against the

7   backdrop of the law at the time of the conduct.").

8        Other jurisprudence that pre-dates the incident supports this finding.  In *Brosseau*, the

9   Ninth Circuit considered the application of qualified immunity in the context of an officer

10   shooting a fleeing suspect "set on avoiding capture through vehicular flight," noting that:

11        the courts found no Fourth Amendment violation when an officer shot
      a fleeing suspect who presented a risk to others. *Cole v. Bone*, *supra*,

12        at 1333 (holding the officer "had probable cause to believe that the
      truck posed an imminent threat of serious physical harm to innocent

13        motorists as well as to the officers themselves"); *Smith v. Freland*,
      954 F.2d, at 347 (noting "a car can be a deadly weapon" and holding

14        the officer's decision to stop the car from possibly injuring others was
      reasonable.)

15   *Brosseau v. Haugen*, 543 U.S. 194, 200 (2004).  In *Smith*, the Sixth Circuit considered an appeal

16   from a suspect who was shot by police while fleeing in his car after a high-speed chase.  *Smith v.*

17   *Freland*, 954 F.2d 343 (6th Cir. 1992).  The officers were able to block him on a dead-end street.

18   *Id.* at 344.  Rather than surrender, the suspect reversed his car and then accelerated in an attempt to

19   escape.  *Id.*  The Court concluded that "[i]n an instant Officer Schulcz had to decide whether to

20   allow his suspect to escape.  He decided to stop him, and no rational jury could say he acted

21   unreasonably." *Id.* at 347.  The Court noted that [e]ven unarmed, he was not harmless; a car can

22   be a deadly weapon." *Id.*  Accordingly, the Sixth Circuit affirmed the district court's holding that

23   the officers did not violate the Fourth Amendment.

24        Because Plaintiffs fail to identify a case that pre-dates the incident where an officer acting

25   under similar circumstances as the Officers were held to have violated the Fourth Amendment, the

26   Court finds that the Officers are therefore entitled to qualified immunity.

27   Case No.: 5:19-cv-08441-EJD

28   ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DIMISSING
     PLAINTIFFS' STATE LAW CLAIMS

United States District Court
Northern District of California

United States District Court
Northern District of California

### C.     Fourteenth Amendment Cause of Action

Defendants move for summary judgment on Plaintiffs' cause of action under the Fourteenth Amendment for wrongfully depriving Decedent's family members of their protected interest in the companionship and society of their child, Ms. Vasquez.  "In determining whether excessive force shocks the conscience, the court must first ask 'whether the circumstances are such that actual deliberation [by the officer] is practical.'"  *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1230 (9th Cir. 2013) (quoting *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir.2008)). "[W]here a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may be found to shock the conscience only if he acts with a purpose to harm unrelated to legitimate law enforcement objectives."  *Hayes*, 736 F.3d at 1230; *see Porter v. Osborn*, 546 F.3d 1131, 1142 (9th Cir. 2008) (applying the purpose harm test to a "fast paced, evolving situation presenting competing obligations with insufficient time for the kind of actual deliberation required for deliberate indifference."); *see Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) ("[T]he heightened purpose-to-harm standard applies where a suspect's evasive actions force the officers to act quickly.").

Because this standard of culpability was clearly established at the time of the shooting, whether the Officers are entitled to qualified immunity on summary judgment turns on whether Defendants can demonstrate facts that justify a jury finding that the Officers acted with an unconstitutional purpose to harm Decedent.  However, for the reasons discussed below the Court need not address qualified immunity with respect to Plaintiffs' Fourteenth Amendment claim.

Plaintiffs' assert that "Defendant Officers' killing of an unarmed young woman who was surrounded by officers and had no way of escaping the officers, loudly shocks the conscience." Opp'n at 22.  They contend that the Officers had "ample opportunity to deliberate" under the circumstances.  *Id.*  However, Defendants argue that the body-worn camera video of the moments leading up to the shooting after the crash, which lasted less than one minute, show an "escalating situation where the officers had to react quickly."  Mot. at 20.  The Court agrees.  The high-speed chase, subsequent crash, and attempted escape together lasted approximately six minutes.  The

1   Officers pursued Ms. Vasquez based on probable cause that she was involved in a drive-by

2   shooting.  After the crash Ms. Vasquez refused to comply with the Officers commands and refused

3   to cease flight.  Defendants emphasize that, during this time, the Officers repositioned themselves

4   and their vehicles to prevent Ms. Vasquez's escape and warned her that they would fire their

5   weapons if she did not stop.  Once Ms. Vasquez dislodged her vehicle from the fence and

6   accelerated into Officer Anaya's patrol vehicle only a few seconds elapsed when the Officers had

7   to make a "snap judgment" to take action.  See *Wilkinson*, 610 F.3d at 554 (finding that "no

8   evidence shows that [Officer] Torres had a purpose to harm Wilkinson apart from legitimate law

9   enforcement objectives" in a situation involving a car chase where the suspect accelerated vehicle

10   in dangerously close proximity to officers on foot).

11        Plaintiffs do not offer sufficient evidence to support the argument that the Officers acted

12   with a purpose to harm Ms. Vasquez unrelated to legitimate law enforcement objectives under

13   these circumstances.  The Court therefore finds that no reasonable jury could come to such a

14   conclusion and GRANTS Defendants' motion with respect to the Fourteenth Amendment claim.

15        **D.      State Law Claims**

16        Plaintiffs remaining claims for violation of the California Bane Act, battery, and

17   negligence arising under state law.  Accordingly, having granted Defendants' Motion for

18   Summary Judgment with respect to Plaintiff's § 1983 and Fourteenth Amendment claims, the

19   Court lacks original jurisdiction over Plaintiffs remaining claims.  Under 28 U.S.C. § 1367(c), a

20   district "may decline to exercise supplemental jurisdiction" *inter alia* where "the district court has

21   dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).  Typically,

22   "when federal claims are dismissed before trial ... pendent state claims should also be dismissed."

23   *Religious Tech. Ctr v. Wollersheim*, 971 F.2d 364, 367-68 (9th Cir. 1992).

24        As is the case here, "in the usual case in which all federal-law claims are eliminated before

25   trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial

26   economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction

27

28

United States District Court
Northern District of California

over the remaining state-law claims." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988), *superseded on other grounds by statute as recognized in Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 557 (10th Cir. 2000)).  The Court, in its discretion, declines to exercise supplemental jurisdiction over the remaining state law claims.  *See City of Colton v. Am. Promotional Events, Inc.-W.*, 614 F.3d 998, 1008 (9th Cir. 2010) (holding that district court acted within its discretion in declining to exercise supplemental jurisdiction after granting summary judgment on all federal claims).

For these reasons, the Court DISMISSES Plaintiffs' state law claims without prejudice.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment as to the 42 U.S.C. § 1983 and Fourteenth Amendment claims against Defendants.  The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims arising under the Cal. Civ. Code § 52.1, battery in violation of Cal. Penal Code § 242, and negligence and **DISMISSES** them without prejudice.

**IT IS SO ORDERED.**

Dated: September 30, 2022

EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California